UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

CHRISTOPHER FRANKENFIELD,

    Plaintiff,

v.                                                                       Hon. Janet T. Neff

COMMISSIONER OF SOCIAL SECURITY,          Case No. 1:18-cv-1144

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making a decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may

not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 43 years of age on his amended alleged disability onset date. (PageID.99.) Plaintiff had completed high school and had previous work as a block mason, buffer, assistant pressman, groundskeeper, and HVAC technician. (PageID.213, 225.) Plaintiff filed an application for benefits on January 19, 2016, alleging that he had been disabled since June 10, 2006, due to ruptured and herniated discs, collapsed vertebrae, degenerative disc disease, Osgood-Schlatter

disease, bursitis, and carpal tunnel syndrome. (PageID.189, 224–25.) Plaintiff's application was denied, and he requested a hearing before an Administrative Law Judge (ALJ). (PageID.120, 137–38.)

On December 19, 2017, ALJ Christopher Mattia conducted a hearing and received testimony from Plaintiff and a vocational expert. (PageID.55–79.) At that time, Plaintiff amended his alleged onset date to September 2, 2015. (PageID.209.) On March 28, 2018, the ALJ issued a written decision finding that Plaintiff was not entitled to disability benefits because he was not disabled within the meaning of the Act. (PageID.38–50.) The Appeals Council denied Plaintiff's request for review on August 20, 2018, rendering the Commissioner's decision the final decision in the matter. (PageID.31–35.) Plaintiff initiated this civil action for judicial review on October 5, 2018.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) degenerative disc disease of the cervical and lumbar spine; (2) right carpal tunnel syndrome; (3) chronic right C6 nerve root irritation; (4) peripheral neuropathy; (5) chronic obstructive pulmonary disease; (6) hiatal hernia; and (7) gastritis, severe impairments that whether considered alone or in combination with other impairments failed to meet or equal the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.63-65).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work subject to the following limitations: (1) he could lift/carry 20 pounds occasionally and 10 pounds frequently; (2) he could stand or walk for six hours in an eight-hour workday; (3) he could sit for six hours in an eight-hour workday, with an

option to alternate between sitting and standing after 30 minutes; (4) he could push or pull within the aforementioned weight restrictions, but only frequently with the upper extremities bilaterally; (5) he could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds; (6) he could occasionally reach overhead and frequently reach in all other directions with the upper extremities bilaterally; (7) he could frequently handle with the right upper extremity; (8) he could occasionally have exposure to extreme cold, wetness, non-weather related humid conditions, or atmospheric conditions such as dusts, noxious odors, fumes, or other respiratory irritants; and (9) he could never have exposure to vibration, unprotected heights, or moving mechanical parts. (PageID.44–45.)

The ALJ found that Plaintiff was unable to perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform. *See Richardson*, 735 F.2d at 964. Based on testimony from the vocational expert, the ALJ found that there existed approximately 145,000 jobs in the national economy which an individual with Plaintiff's RFC could perform. (PageID.49-50.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

**ISSUES**

**I.     Consideration of MRI Reports**

Plaintiff argues that, contrary to SSR 06-03p, which requires an ALJ to "consider all of the available evidence in the individual's case record . . . includ[ing] but . . . not limited to, objective medical evidence," 2006 WL 2329939, at *1, the ALJ failed to consider all of the abnormalities in

5

his spine as disclosed in the multiple MRI reports.[2]  Plaintiff argues that the ALJ's explanation of the MRI findings "fails to show how, if at all, he considered significant abnormalities in the Plaintiff's lumbar and cervical spine." (PageID.800.)  Plaintiff contends that the ALJ might have reached a different RFC assessment had he considered all of the abnormalities disclosed on the MRI reports.

As Plaintiff acknowledges, "'an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.'" *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000).  Regardless, the ALJ cited each of the MRI reports at issue in his discussion of the medical evidence.  In fact, after mentioning the reports, the ALJ identified the courses of action Plaintiff's doctors took based on the reports.  For example, based on the September 2015 imaging of Plaintiff's cervical spine, "Dr. Bhimalli continued administering lumbar epidural steroid injections as well as occipital nerve blocks through 2016." (PageID.46.)  And based on the February 2017 post-surgery lumbar spine MRI, Dr. Boyce "referred [Plaintiff] to physical therapy and ordered flexion/extension x-rays of his cervical spine." (*Id.*)  Plaintiff fails to explain how the ALJ's recitation of all the findings in the MRI reports would have resulted in a more restrictive RFC.  As a lay person, the ALJ was not qualified to interpret raw medical data or translate it into functional limitations. *See Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the determination."); *Reed v. Sec'y of Healthy & Human Servs.*, 804 F. Supp. 914, 919 (E.D. Mich. 1992) ("Many courts note that the ALJ is not qualified to evaluate

---

[2] Although SSR 06-03p has been rescinded, it continues to apply to claims filed before March 27, 2017.  82 Fed. Register at 15263.  SSR 06-03p applies to Plaintiff's claim as he filed it prior to March 27, 2017.

medical data or to express medical opinions.") In fact, had the ALJ sought to interpret the findings in the MRI reports, as Plaintiff intimates he should have done, he would have improperly "succumb[ed] to the temptation to play doctor." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990); *see also Ross v. Colvin*, No. 15-12353, 2016 WL 6653015, at *5 (E.D. Mich. Aug. 10, 2016), *adopted by* 2016 WL 4561313 (E.D. Mich. Sept. 1, 2016) ("Because no state agency physician or other medical consultant reviewed and offered an opinion regarding the limiting effects of the x-ray tests and MRI exams, the ALJ acted outside of his expertise and interpreted the objective medical evidence on his own in assessing Ross's RFC.").

Accordingly, this argument lacks merit.

## II.     Medication Side Effects

Next, Plaintiff argues that the ALJ failed fully to mention and analyze the dosage and side effects of Plaintiff's medications. In evaluating the intensity and persistence of a claimant's symptoms and determining the extent to which those symptoms limit a claimant's capacity for work, the Commissioner considers various factors, including "[t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms." 20 C.F.R. § 416.929(c)(3)(iv). Allegations of a medication's side effects must be supported by objective medical evidence. *See Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 665–66 (6th Cir. 2004) (where the plaintiff testified that she suffered from dizziness and drowsiness as a result of her medications, the ALJ did not err in finding that she suffered no side effects where her medical records did not show that she reported side effects to her physicians). Here, the ALJ considered Plaintiff's testimony that his medications caused him to lose coordination and grip strength and discounted it because it was inconsistent with examination findings of record showing that Plaintiff had "full grip strength, intact dexterity, and normal

7

coordination." (PageID.47 (citing PageID.294, 484).) Plaintiff fails to point to any medical record showing that he reported disabling medication side effects to his physicians.

Accordingly, this claim of error lacks merit.

### III.     Application of SSR 17-2p

Plaintiff argues that the ALJ failed to properly apply SSR 17-2p in finding that Plaintiff's impairments did not medically equal Listing 1.04 because a preponderance of the evidence supported a medical equivalence finding. Plaintiff further argues that the ALJ failed to follow SSR 17-2p by not obtaining a medical opinion to support his negative step-three equivalency finding.

At step three of the disability evaluation process, the Commissioner must consider whether a claimant's impairments meet or medically equal any of the relevant listing requirements of 20 C.F.R. Part 404, Subpart P, App. 1, 20 C.F.R. § 404.1520(a). An impairment that meets only some of the requirements of a listing does not qualify, despite its severity. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Conversely, a claimant who meets the requirements of a listed impairment will be deemed conclusively disabled and entitled to benefits. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014). A claimant can provide evidence of medical equivalence to a listing by presenting "medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan*, 493 U.S. at 531 (italics in original).

SSR 17-2p, adopted March 27, 2017, provides the analytical process for step three determinations. SSR 17-2p, 2017 WL 3928306 (Mar. 27, 2017). The Ruling replaced SSR 96-6p, which required an ALJ to obtain a medical opinion on equivalence. *See Thomas v. Comm'r of*

*Soc. Sec.*, No. 12-14758, 2014 WL 688198, at *8-9 (E.D. Mich. Feb. 21, 2014).  Under SSR 17-2p, an ALJ is not required to obtain a medical expert's opinion on equivalence if the ALJ believes that the "evidence does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment." 2017 WL 3928306, at *4 (SSA Mar. 27, 2017); *see Mitchell v. Comm'r of Soc. Sec.*, No. 1:18-cv-808, 2019 WL 2125540, at *3 (W.D. Mich. Apr. 19, 2019) ("In SSR 17-2p, the Social Security Administration clarified that an ALJ is not required to obtain a medical expert's opinion before making a finding that an individual's impairments do not equal a listing impairment.").  In addition, if the ALJ believes that the preponderance of the evidence in the record does not support an equivalence finding, the ALJ "is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment." 2017 WL 3928306, at *4.  Rather, "a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding." *Id.*  Finally, the ALJ's "articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide [a] rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." *Id.*

Contrary to Plaintiff's argument, the ALJ complied with SSR 17-2p.  First, he met the articulation requirement by stating that "[t]he claimant's condition does not meet or equal listing 1.04." (PageID.44.)  The ALJ further noted that Plaintiff's impairment did not reach the severity required by 1.04 because there was "no evidence of compromise of a nerve root or spinal cord with the requisite evidence of nerve root and associated symptoms, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication." (*Id.*)  Second, because the ALJ concluded that

9

the evidence did not support that Plaintiff's impairments medically equaled Listing 1.04, he was not required to obtain a medical expert's opinion.

Moreover, the medical evidence supported the ALJ's conclusion that Plaintiff's impairments did not medically equal Listing 1.04(A). There was no evidence of nerve root compression. A September 2016 MRI of Plaintiff's lumbar spine revealed "mild bilateral inferior neural foraminal narrowing with *suspected* very slight contact with the exiting right and left nerve roots" at L4-L5, "*suspected* slight contact of the descending left S1 nerve root at L5-S1," and "*suspect[ed]* . . . very slight contact of the exiting left and right S1 nerve roots" at L5-S1, but it did not show nerve root compression. (PageID.379 (italics added).) A February 2017 post-surgery MRI of Plaintiff's lumbar spine revealed changes at L4-5 approaching "the ventral margin of the bilateral L5 traversing nerve roots," which was new from the previous study, but there was not nerve root compression. (PageID.384.) And, as the ALJ noted, examination findings from 2015 through 2017 reported that Plaintiff had full strength in both lower extremities, normal sensation, negative straight leg raising in both the seated and supine positions, normal reflexes, and normal gait. (PageID.315, 348, 430, 465–66, 484, 669, 671, 743.) These mostly normal examination findings, coupled with the lack of evidence of both nerve root compression and symptoms of nerve root compression required by listing 1.04(A), constitute substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not medically equal Listing 1.04(A).

Finally, Plaintiff's argument that medical findings in the record support medical equivalency by a preponderance of the evidence is an invitation for the Court to reweigh the evidence that was presented to the ALJ. This is not a proper basis for relief. *See, e.g., Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (noting that the court "reviews the

10

entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in the evidence, decide questions of credibility, or substitute its judgment for that of the ALJ").

Accordingly, this claim of error is rejected.

## CONCLUSION

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within that time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


Dated: February 5, 2020                               /s/ Sally J. Berens
                                                      SALLY J. BERENS
                                                      U.S. Magistrate Judge